FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Feb 27, 2018

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

**MURPHY OIL CORPORATION**     **PLAINTIFF**

v.     CASE NO.     18-1013 SOH

**LIBERTY MUTUAL FIRE INSURANCE**     **DEFENDANT**
**COMPANY**

### COMPLAINT

Plaintiff Murphy Oil Corporation ("Murphy Oil"), by its undersigned counsel, hereby submits its Complaint against Liberty Mutual Fire Insurance Company ("Liberty Mutual") as follows:

### THE NATURE OF THIS ACTION

1. Murphy Oil brings this insurance coverage action for declaratory judgment and damages for breach of contract arising from Liberty Mutual's breach of its contractual obligations under Liberty Mutual Policy No. TB2-641-004245-002 (the "Liberty Mutual Policy") by wrongfully refusing to defend and pay Murphy Oil's costs incurred to defend against the claim as first set forth in a demand letter dated December 13, 2012 from Valero Refining-Meraux LLC ("Valero") for loss due to property damage caused by a fire at an oil refinery located in Meraux, St. Bernard Parish, Louisiana ("Underlying Claim for Damages.")

2. Murphy Oil seeks to have this Court declare Murphy Oil's rights and Liberty Mutual's obligations under the Liberty Mutual Policy for liability for such alleged loss.

3. Specifically, Murphy Oil seeks a declaration that (a) Liberty Mutual has a duty to defend Murphy Oil and pay its defense costs incurred since the inception of Valero's Underlying Claim for Damages, (b) such duty is triggered independent of Murphy Oil's exhaustion of its

deductible and is due and payable outside of the limits of the Liberty Mutual Policy and (c) Liberty Mutual has a duty to contribute up to $2,000,000 for any judgment or settlement.

4. Likewise, Liberty Mutual's refusal to defend Murphy Oil and pay its defense costs was a breach of contract because some of the allegations arising out of Valero's Underlying Claim for Damages are covered or potentially covered under the Liberty Mutual Policy, thus triggering Liberty Mutual's duty to defend and pay the costs of such defense.

5. Despite its contractual obligations under the coverage it provided Murphy Oil, Liberty Mutual has fully denied any coverage obligations for the Underlying Action including any obligation to perform its duties to defend and indemnify Murphy Oil in connection with Valero's Underlying Claim for Damages, even though such Claim is covered or potentially covered by the Liberty Mutual Policy.

## THE PARTIES

6. Murphy Oil is a corporation established under the laws of Delaware with its principal place of business in El Dorado, Arkansas.

7. Upon information and belief, Defendant Liberty Mutual is incorporated in Wisconsin with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between citizens of different states.

9. The Court has personal jurisdiction over Liberty Mutual pursuant to Ark. Code Ann. § 16-4-101(B) and the due process of law clause of the Fourteenth Amendment of the United States Constitution.

10. Venue is proper in the Western District of Arkansas, El Dorado Division pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### I.   THE LIBERTY MUTUAL POLICY

11. For the June 1, 2012 through June 1, 2013 policy period, Murphy Oil purchased a primary Commercial General Liability ("CGL") policy, the Liberty Mutual Policy, a copy of which is attached as Ex. 1.

12. The Liberty Mutual Policy has an "each occurrence" limit of $5,000,000.

13. The Liberty Mutual Policy has a $3,000,000 deductible which is eroded by Murphy Oil's payment of damages and supplementary payments, which payments also erode the each occurrence limit.

14. Importantly, the Liberty Mutual Policy was modified by an endorsement titled, DEDUCTIBLE – DAMAGES AND SUPPLEMENTARY PAYMENTS (the "Deductible Endorsement"), that specifically states:

> A. DEDUCTIBLE
>
> * * *
>
> You are responsible, up to the Deductible Amount in the Schedule, for the total of:
>
> 1. All damages, including amounts paid in settlement of a claim or "suit" and medical payments, plus
>
> 2. All SUPPLEMENTARY PAYMENTS

- 3 -

#90621144v1 3497597_3

because of all "bodily injury" and "property damage" under Coverage A that results from any one "occurrence" . . . and all "bodily injury" sustained by one person under Coverage C.

Subject to the applicable limits of insurance, we are responsible for those amounts of damages and medical expenses to which this insurance applies and SUPPLEMENTARY PAYMENTS that exceed the Deductible Amount shown in the Schedule.

\* \* \*

C. CONDITIONS

\* \* \*

4. Other Rights and Duties (Ours and Yours)

All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or suit against you, and (b) your duties if injury occurs, apply irrespective of application of this deductible endorsement.

15.     The effect of the Deductible Endorsement is that Murphy Oil must incur $3,000,000 in supplementary payments and/or indemnity costs, and thereafter Liberty Mutual is obligated to pay the next $2,000,000 in indemnity costs, if any.

16.     Moreover, at all times, Liberty Mutual is immediately obligated to defend and/or pay Murphy Oil's defense costs **outside** of the deductible and the remaining $2,000,000 limits of the Liberty Mutual Policy.

17.     The Liberty Mutual Policy is an occurrence based policy, with an insuring agreement that states in relevant part:

> **1.     Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not

- 4 -

apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III -Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A or B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy Period.

18. Under the Liberty Mutual Policy, "Property Damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

19. The Liberty Mutual Policy defines "hostile fire" as "one which becomes uncontrollable or breaks out from where it was intended to be."

20. Under the Liberty Mutual Policy, "Suit" means "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

The Liberty Mutual Policy also expressly states that Liberty's duty to defend is broad and confirms in paragraph C.4 of the Deductible Endorsement that Liberty has a "duty to defend any claim, proceeding or suit against you."

The Liberty Mutual Policy also expressly states that the limit of insurance is "used up . . . in the payment of judgments of settlements" as opposed to the payment of defense costs.

21. The Liberty Mutual Policy was modified by an endorsement that specifically states:

> Endorsement, **ARKANSAS CHANGES,** modifies insured provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Pursuant to Arkansas Code Section 23-79-155:
>
> **17.** The definition of "occurrence" includes faulty workmanship; and
>
> **18.** The definition of "occurrence" required by this section of Arkansas law does not serve to limit or restrict the applicability of any exclusion for "bodily injury" or "property damage" under this Coverage Part.

22. Likewise, the Damage to Property exclusion in the Liberty Mutual Policy was modified by another endorsement that states:

> Endorsement, **ALIENATED PREMISES COVERAGE,** modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> EXCESS
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Subparagraph (2) of the Damage to Property exclusion is replaced by the following:

#90621144v1 3497597_3

> (2) Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises, and results from one or more hazards that were known by you, or should have reasonably been known by you, at the time the property was sold, given away or abandoned.

23. The Liberty Mutual Policy contains the following Contractual Liability Exclusion:

> **b. Contractual Liability**
>
> Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement.

24. No exclusions under the Liberty Mutual Policy preclude either Liberty Mutual's defense or payment of defense costs of the Underlying Claim for Damages or Liberty Mutual's required payment of up to $2,000,000 for any judgment or settlement of the Underlying Action.

25. Murphy Oil has paid all premiums due under the Liberty Mutual Policy.

26. Murphy Oil has satisfied all the applicable conditions precedent under the Liberty Mutual Policy with regard to its seeking a defense, payment of defense costs and/or indemnity against the Underlying Claim for Damages.

## II.   THE ALLEGATIONS OF THE UNDERLYING CLAIM FOR DAMAGES AS INCORPORATED INTO THE UNDERLYING ACTION

27. On December 13, 2012, Valero made its Underlying Claim for Damages pursuant to a claim for indemnification under the Asset Purchase Agreement, a copy of which is attached as Ex 2.

28. Valero alleged that the Crude Unit Fire was caused by Murphy Oil's acts and omissions, including using the wrong material for the pipe elbow and failing to monitor and inspect refinery piping for corrosion.

#90621144v1 3497597_3

29. Valero sought damages in excess of $25,000,000 for, among other things, reconstruction of the Crude Unit.

30. On December 26, 2012, Murphy Oil responded to Valero denying the merit of Valero's claims and denying liability.

31. Murphy Oil and Valero exchanged a number of letters over the next year in which Valero sought to resolve the dispute.

32. In June 30, 2016, Valero sent another letter reiterating its claims and demands, in furtherance of the parties' ongoing proceeding to resolve the dispute.

33. On August 2, 2016, Murphy Oil again responded to the merits and continued to deny Valero's Claim for Damages.

34. On February 7, 2017, Valero filed a complaint against Murphy Oil captioned "Valero Refining-Meraux LLC, Plaintiff, against Murphy Oil Corporation, Defendant," in the Supreme Court of The State of New York, County of New York, a copy of which is attached as Ex. 3 ("the Underlying Action").

35. As detailed below, the factual allegations of the Underlying Claim for Damages as incorporated into the Underlying Action clearly trigger Liberty Mutual's duty to defend and pay Murphy Oil defense costs against the underlying claims and action.

A. **Valero and Murphy Oil's Purchase Agreement**

36. Murphy Oil owned and operated an oil refinery at Meraux, St. Bernard Parish, Louisiana (the "Refinery") for approximately fifty years, from 1961 to 2011.

37. In September 2011, Valero purchased the Refinery from Murphy Oil pursuant to an Asset Purchase Agreement, a copy of which is attached hereto as Ex. 4 ("Agreement").

38. The relevant terms of the Agreement in the Underlying Claim for Damages and as incorporated into the Underlying Action can be summarized as follows (and any undefined capitalized terms have the meaning given to them in the Agreement):

> § 2.04: Valero assumed only the liabilities expressly assumed in the Agreement, and Murphy Oil retained all others.
>
> § 3.09: Murphy represented that it was not in violation of any Applicable (non-Environmental) Law relating to the Refinery except for violations that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, and that, to its Knowledge, no events, circumstances, or conditions existed between January 1, 2011 and the Closing that would reasonably be expected to constitute or result in a failure of the Refinery to comply with any Applicable Law.
>
> § 3.10(c): Murphy Oil represented that the property at the Refinery was "adequate" for the business then conducted.
>
> § 3.12: Murphy Oil warranted that it would maintain insurance coverage in accordance with reasonable commercial standards including insurance policies and fidelity bonds.
>
> § 3.16: Murphy Oil represented that it was not in material violation of applicable Environmental Law.
>
> §13.02: Murphy Oil agreed to indemnify Valero for any loss or damage arising out of any misrepresentation or breach of warranty or Retained Liability, subject to a deductible and cap.

**B.     The Crude Unit Fire at the Refinery**

39. The Underlying Claim for Damages as incorporated into the Underlying Action describes a crude unit at a refinery as the initial processing unit for the crude stock. In general, a crude unit distills incoming crude oil into various fractions of different boiling ranges, each of which are further processed in other processing units at the refinery.

40. During each phase of this process, extensive piping transports the crude oil and its fractions throughout the crude unit and then to other units at the refinery.

41. The Underlying Claim for Damages as incorporated into the Underlying Action alleges that on July 22, 2012, a catastrophic fire occurred during the startup of the crude unit (the "Crude Unit Fire").

42. The Underlying Claim for Damages as incorporated into the Underlying Action further alleges that "[b]efore the fire could be fully extinguished, it caused extensive structural damage to the crude unit."

43. The Underlying Claim for Damages as incorporated into the Underlying Action further alleges that a subsequent investigation conducted on behalf of Valero concluded that the Crude Unit Fire was allegedly caused by corrosion of an eight-inch pipe elbow which caused the elbow to fail. The purported failure allegedly caused hot product to be released and ignited, which caused the Crude Unit Fire.

44. The Underlying Claim for Damages as incorporated into the Underlying Action alleges that the purported "corrosion that caused the failure occurred over the years that Murphy owned and operated the Refinery. Such extensive corrosion did not and could not occur during the approximately ten months that Valero owned and operated the Refinery."

45. The Underlying Claim for Damages as incorporated into the Underlying Action further alleges that:

> Because of the extent of the corrosion and the low thickness readings, the eight-inch pipe elbows were unfit for general use and operations at the Refinery and were inadequate for the conduct of the Business as currently conducted at the time of Closing. The piping circuit that included these elbows was inadequate for its intended use and for general operation of the crude unit.

46. Murphy Oil did not know of the alleged corrosion that purportedly caused the Crude Unit Fire.

#90621144v1 3497597_3

47. Indeed, Valero does not assert any claims of intentional conduct in the Underlying Claim for Damages as incorporated into the Underlying Action and does not seek punitive or exemplary damages.

### III. MURPHY OIL'S INSURANCE CLAIM

48. Murphy Oil gave timely notice of Valero's claims to Liberty Mutual on December 18, 2012.

49. By letter of January 18, 2013, Liberty Mutual reserved its rights, claiming that there was no "suit" and thus no current duty to defend, but also that Liberty Mutual "appears to have no duty to indemnify."

50. After quoting extensively from the policy, and various correspondence, Liberty Mutual took the following positions:

(1) As "there is currently no suit against Murphy Oil," there was "no possibility of any duty to defend."

(2) There was no contractual liability coverage for injury prior to the Agreement, as such contractual liability could not fall within the exception of Exclusion b.

(3) Liberty Mutual also argued that "[s]ince Murphy Oil no longer owned or operated the subject Meraux refinery after the date of sale (September 1, 2011) to Valero, the refinery was no longer insured under the subject policies referenced above."

(4) "There is no coverage for this claim to the extent that exclusion 'j' in the subject policies, as amended by the Alienated Premises Coverage Endorsement, applies to bar coverage as set forth above."

(5) Pollution coverage under the Pollution Limit Endorsement is capped at $25,000. Further, Murphy Oil did not comply with the reporting and other conditions of the Pollution Liability Coverage Extension Endorsement.

(6) There is no coverage unless the relief sought qualifies as "damages."

(7) There is no coverage for costs incurred to comply with statutes and regulations.

(8) There is no coverage to the extent that harm suffered by Valero does not constitute "property damage."

(9) There is no coverage to the extent that property damage did not stem from an "occurrence."

(10) There is no coverage to the extent that personal injury did not occur during the policy period.

(11) There is no coverage to the extent that property damage was expected or intended.

(12) The pollution exclusion may bar coverage.

(13) Coverage may be precluded by late notice of occurrence or claim.

(14) There is no coverage for costs or obligations assumed by Murphy Oil.

(15) There is no coverage for known losses.

(16) There is no coverage for punitive damages to the extent barred by the Liberty Mutual policy or public policy.

(17) Coverage is excess of "other insurance."

51. These positions are meritless and do not preclude coverage under the Liberty Mutual Policy for the Underlying Action.

52. Despite Liberty Mutual's wrongful denial, Murphy Oil continued to update Liberty Mutual regarding Valero's claims and demands.

53. On April 7, 2017, Murphy Oil tendered the Underlying Action to Liberty Mutual and reiterated its demand that Liberty Mutual honor its contractual obligations to its policyholder and defend Murphy Oil and pay for the costs incurred against the Underlying Claim for Damages as incorporated against the Underlying Action.

54. By a November 27, 2017 letter, Liberty Mutual, again, wrongfully denied coverage for the Underlying Claim for Damages as incorporated into the Underlying Action

#90621144v1 3497597_3

repeating its full denial of any duty to defend or indemnify Murphy Oil for any settlement or judgment.

55. Liberty Mutual's November 27, 2017 letter largely restated its previous coverage position based upon the specious grounds from its January 18, 2013 letter.

56. To the contrary, the Underlying Claim for Damages as incorporated into the Underlying Action is covered or potentially covered by the Liberty Mutual Policy and none of Liberty Mutual's purported coverage denial grounds preclude coverage under the Liberty Mutual Policy.

57. Likewise, no exclusions under the Liberty Mutual Policy preclude either Liberty Mutual's defense of the Underlying Claim for Damages as incorporated into the Underlying Action or Liberty Mutual's required payment of up to $2,000,000 for any judgment or settlement of the Underlying Action.

58. Because of Liberty Mutual's repeated denial of coverage and abandonment of Murphy Oil, Murphy Oil is now forced to bring this action.

59. Accordingly, Murphy Oil is entitled to a declaration of its rights and Liberty Mutual's obligations under the Liberty Mutual Policy as well as damages stemming from Liberty Mutual's breach of its duty to defend and pay the costs of defense incurred by Murphy Oil against the Underlying Claim for damages as incorporated into the Underlying Action.

## COUNT I
### (DECLARATORY JUDGMENT)

60. Murphy Oil repeats and realleges the allegations in the preceding paragraphs as if the same were set forth at length herein.

61. Likewise, the Underlying Claim for Damages as incorporated into the Underlying Action alleges facts that give rise to the possibility that Murphy Oil could have had liability to

Valero in the absence of the Agreement under a number of common law theories, such as negligence or other tort theories.

62. An actual and justiciable controversy has arisen between Murphy Oil and Liberty Mutual concerning Liberty Mutual's obligations under the Liberty Mutual Policy, including, but not limited to, Liberty Mutual's immediate obligation to pay for the defense of the Underlying claim for Damages as incorporated into the Underlying Action, regardless of whether Murphy Oil has exhausted its $3 million deductible.

63. Murphy Oil seeks, and is entitled to receive, a judicial determination of its rights under the Liberty Mutual Policy and Liberty Mutual's duty to defend and pay Murphy Oil's defense costs against the Underlying Claim for Defense as incorporated into the Underlying Action. Specifically, Murphy Oil seeks a declaration:

> (1) that the damages sought in the Underlying Claim for Damages as incorporated into the Underlying Action allegedly occurred on account of covered "Property Damage" as defined in the Liberty Mutual Policy;
>
> (2) that Liberty Mutual must immediately defend Murphy Oil and pay its defense costs incurred in the Underlying Claim for Damages as incorporated into the Underlying Action;
>
> (3) that Liberty Mutual's costs to defend Murphy Oil against the Underlying Claim for Damages as incorporated into the Underlying Action are outside and do not erode the limits of the Liberty Mutual Policy independent of whether Murphy Oil has satisfied the $3,000,000 deductible requirement of the Liberty Mutual Policy; and
>
> (4) that Liberty Mutual must pay up to $2,000,000 of any judgment or settlement of the Underlying Claim for Damages as incorporated into the Underlying Action.

64. Judicial declarations are necessary and appropriate in order that Murphy Oil and Liberty Mutual may ascertain their rights and obligations under the Liberty Mutual Policy.

#90621144v1 3497597_3

## COUNT II
## (BREACH OF CONTRACT)

65.  Murphy Oil repeats and realleges the allegations in the preceding paragraphs as if the same were set forth at length herein.

66.  The Liberty Mutual Policy is a valid contract between Murphy Oil and Liberty Mutual.

67.  Murphy Oil has paid all premiums due under the Liberty Mutual Policy.

68.  Murphy Oil has satisfied all the applicable conditions precedent under the Liberty Mutual Policy with regard to its seeking a defense, payment of defense costs, and/or indemnity against the Underlying Claim for Damages as incorporated into the Underlying Action.

69.  Pursuant to the Liberty Mutual Policy, Liberty Mutual has an immediate duty to defend and pay defense costs incurred by Murphy Oil against the Underlying Claim for Damages as incorporated into the Underlying Action.

70.  Liberty Mutual breached its duty to defend and pay defense costs incurred by Murphy Oil with respect to the Underlying Claim for damages as incorporated into the Underlying Action.

71.  As a direct and proximate result of such breach of contract, Murphy Oil has sustained and continues to sustain damages in defense costs expended defending against the Underlying Claim for damages as incorporated into the Underlying Action.

## PRAYER FOR RELIEF

WHEREFORE, Murphy Oil is entitled to: (i) a declaration pursuant to 28 U.S.C. § 2201 by this Court that Liberty Mutual is obligated to defend and pay the defense costs incurred by Murphy Oil against the Underlying Claim for Damages as incorporated into the Underlying Action and such defense does not erode the limits of the Liberty Mutual Policy and that Liberty

Mutual must pay $2,000,000 of any judgment or settlement of the Underlying Action; (ii) a judgment against Liberty Mutual, awarding to Murphy Oil its attorneys' fees and expenses incurred in defending against the Underlying Claim for Damages as incorporated into the Underlying Action; (iii) twelve percent (12%) damages upon the amount of the loss and reasonable attorneys' fees pursuant to Ark. Code Ann. § 23-79-208; and (iv) such additional relief as the Court deems just and appropriate.

<strong><u>DEMAND FOR JURY TRIAL</u></strong>

Murphy Oil Corporation demands a trial by jury of any and all issues so triable.

Dated: <u>February 27, 2018</u>          By: _____
                                         Julie DeWoody Greathouse (AR Bar #99159)
                                         Julie@ppgmrlaw.com
                                         Molly S. Shepherd (AR Bar #2013187)
                                         molly@ppgmrlaw.com
                                         John F. Peiserich (AR Bar #2002009)
                                         john@ppgmrlaw.com
                                         **PPGMR LAW, PLLC**
                                         P.O. Box 251618
                                         Little Rock, Arkansas 72225-1618
                                         (501) 603-9000 | Facsimile (501) 603-0556

                                         Robert H. Shulman
                                         (301) 951-9335 | rshulman@paleyrothman.com
                                         Patricia M. Weaver
                                         (301) 951-9360 | tweaver@paleyrothman.com
                                         **Paley, Rothman, Goldstein, Rosenberg
                                         Eig & Cooper, Chartered**
                                         4800 Hampden Lane, Sixth Floor
                                         Bethesda, Maryland 20814
                                         Facsimile (301) 654-7354

                                         Motions for Leave to Appear *Pro Hac Vice*
                                         Pending

                                         ***ATTORNEYS FOR MURPHY OIL
                                         CORPORATION***

#90621144v1 3497597_3